FOURTH DIVISION
March 17, 2016

2016 IL App (1st) 152089

No. 1-15-2089

| | | |
|---|---|---|
| THE VILLAGE OF CHICAGO RIDGE, a Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | 14 MR 682 |
| | ) | |
| THE CHICAGO RIDGE FIREFIGHTERS' PENSION BOARD OF TRUSTEES, a Separate Statutory Governmental Entity, and DAVID BRICKER, | ) ) ) ) ) | Honorable Moshe Jacobius, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices Ellis and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    On March 20, 2014, defendant David Bricker presented the Chicago Ridge Firefighters'

Pension Board (Pension Board) with a request for retirement benefits as of May 10, 2014.  At the

time of his retirement, and pursuant to the terms of a "Collective Bargaining Agreement" (CBA),

Bricker was entitled to a 20% buyout increase in his salary on his last day worked.  The Pension

Board included the 20% buyout in its calculation of Bricker's pensionable salary, and the Village

of Chicago Ridge appealed that finding.  The circuit court of Cook County reversed the Pension

Board's ruling and found that the 20% buyout could not be included in the calculation of

Bricker's pensionable salary.  The Pension Board now appeals the circuit court's ruling.  For the

reasons that follow, we find the Pension Board's calculation of Bricker's pensionable salary is

clearly erroneous and, accordingly, affirm the circuit court's ruling, and remand the matter to the

Pension Board for redetermination of Bricker's pensionable salary.

¶ 2                                    BACKGROUND

¶ 3      Bricker submitted an application for pension benefits to the Pension Board on March 20, 2014.  At the time of his effective retirement date of May 10, 2014, Bricker was 50 years old and had 25 years and 9 months of service with the Chicago Ridge fire department.  Accordingly, Bricker was eligible for 64.38% of his salary on the date of his retirement.

¶ 4      At the time of his retirement, Bricker was a party to a CBA between the Village of Chicago Ridge and the Chicago Ridge Professional Firefighters' Union.  Article XIII, section 13.1 of the CBA, "Wages and Compensation" incorporates a letter of understanding providing for an increase in pay at the time of retirement.  The letter of understanding states:  "If a bargaining unit employee retires on his/her 25[th] anniversary year and is 50 years of age or over, he/she can retire with a 20% buyout (paid per hour only for the last day worked).  He/she must retire on his/her 25[th] anniversary."  When calculating Bricker's annual pension, the Pension Board considered section 4402.35 of the Administrative Code (50 Ill. Adm. Code 4402.35 (1996)), entitled "Salary for Pension Purposes," along with the above mentioned CBA.

¶ 5      After a hearing and consideration of the evidence presented before it, the Pension Board issued a "Decision and Order" on April 30, 2014 finding Bricker's pensionable salary was $110,277.61.  In coming to this calculation, the Pension Board included the 20% buyout that Bricker was paid on his last day of employment.  The Village of Chicago Ridge filed a "Complaint for Administrative Review" in the circuit court of Cook County arguing that the Pension Board's calculation was incorrect because the 20% buyout should not have been included as pensionable salary.  As such, the Village of Chicago Ridge argues that Bricker's pensionable salary should have been $95,155.78.

¶ 6    On June 18, 2015, the circuit court entered an order reversing the Pension Board's "Decision and Order," remanding the matter to the Pension Board for a redetermination of Bricker's pensionable salary. The Pension Board now appeals the circuit court's ruling. For the reasons below, we affirm the circuit court's ruling.

¶ 7                                ANALYSIS

¶ 8    The sole issue presented in this appeal is whether the 20% buyout as defined in the CBA should be included in Bricker's pensionable salary. There is no despute between the parties that this issue involves a mixed question of law and fact and that an administrative agency's determination involving a mixed question of law and fact should not be disturbed unless it is clearly erroneous. *City of Belvidere v. Illinois State Labor Relations Board,* 181 Ill. 2d 191, 205 (1998). "[T]he agency decision will be deemed 'clearly erroneous' only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security,* 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)).

¶ 9    In administrative review proceedings, our role is to review the decision of the administrative agency, rather than that of the circuit court. *Roselle Police Pension Board v. Village of Roselle,* 232 Ill. 2d 546, 551-52 (2009). Here, the Pension Board found that the 20% buyout as defined in the CBA should be included in Bricker's pensionable salary. The Village of Chicago Ridge challenges that finding arguing that the 20% buyout should not be included in Bricker's pensionable salary. The following provisions are relevant in determining whether the Pension Board's finding to include the 20% buyout in Bricker's pensionable salary was clearly erroneous.

¶ 10    Section 4-118.1(d) of the Illinois Pension Code, which addresses "Firefighters' Pension Fund," defines "salary" as:

> "(d) 'Salary' means the annual salary, including longevity, attached to the firefighter's rank, as established by the municipality appropriation ordinance, including any compensation for overtime which is included in the salary so established, but excluding any 'overtime pay', 'holiday pay', 'bonus pay', 'merit pay', or any other cash benefit not included in the salary so established."  40 ILCS 5/4-118.1(d) (West 2012).

¶ 11    Further, the Illinois Administrative Code provides that when computing pensions

> "All salary, as defined in Section 4402.30 of this Part, shall be used in pension computations for purposes of determining the correct amount of employee contributions. The following types of pay are considered salary, in accordance with the definition in Section 4402.30:

> a) Base Pay

> The basic salary attached to rank which is specified in the bargaining contract, municipal pay plan or any other document which establishes salary.

> * * *

> d) Longevity

> Additional pay received after the employee has attained a specified number of years of service. This pay may be received with regular

salary or in one or more lump sum payments during the year. When paid in a lump sum, the amount should be prorated to determine the monthly equivalent to compute all pension contributions and benefits."  50 Ill. Adm. Code 4402.35 (1996).

Section 4402.30 of the Illinois Administrative Code, referenced in the above regulation, defines salary as:

"Salary, for purposes of this Part, means any fixed compensation received by an employee of a municipality that participates in one of the pension funds established under Article 3 or 4 of the Illinois Pension Code, which has been approved through an appropriations ordinance of the municipality. Salary is received regularly and is attached to the rank or class to which the firefighter or police officer is assigned."  50 Ill. Adm. Code 4402.30 (1996).

¶ 12    Article XIII, section 13.1 of the CBA, "Wages and Compensation" incorporates a letter of understanding providing for an increase in pay at the time of retirement.  The letter of understanding states: "If a bargaining unit employee retires on his/her 25th anniversary year and is 50 years of age or over, he/she can retire with a 20% buyout (paid per hour only for the last day worked).  He/she must retire on his/her 25th anniversary."

¶ 13    Based on the Pension Code, the Illinois Administrative Code and the CBA, the Pension Board argues that the 20% buyout as provided for in the CBA, which was adopted by resolution, should be part of Bricker's pensionable salary because: (1) section 4402.35(a) defines "base pay" as "the basic salary attached to rank which is specified in the bargaining contract"; (2) the 20%

buyout was a longevity award because Bricker was only entitled to the buyout upon completing 25 years of service as opposed to any extraordinary deed or accomplishment, suggesting the buyout was based on longevity; (3) the CBA does not specifically refer to the 20% buyout as a one-time "award" at any point; and (4) the Illinois Pension Code does not bar end-of-the-year longevity bonuses.

¶ 14    The Village of Chicago Ridge, on the other hand, argues that the 20% buyout should not be part of Bricker's pensionable salary because: (1) the 20% buyout was a one-time, one-day award because it is "paid per hour only for the last day worked" and, therefore, is not longevity pay; (2) the CBA has a section that deals with longevity pay and the 20% buyout is not contained within that section but in a separate section dealing with retirement provisions; and (3) any pensionable salary, here the end-of-the-year 20% buyout, must be approved by the appropriations ordinance of the municipality, which did not happen here.

¶ 15    The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *Moore v. Green,* 219 Ill. 2d 470, 479 (2006).  Like any other exercise in statutory construction, the court's analysis begins with the specific language contained in the statute because the words used provide the best indication of legislative intent. *Hernandez v. Kirksey,* 306 Ill. App. 3d 912, 914 (1999).  Where an enactment is clear and unambiguous, we are not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express. *DeSmet v. County of Rock Island,* 219 Ill. 2d 497, 510 (2006).

¶ 16    We find that answer to whether the 20% buyout as defined in the CBA should be included in Bricker's pensionable salary hinges on whether the 20% buyout in the CBA was

"approved through the appropriations ordinance of the municipality." Section 4-118.1(d) of the Illinois Pension Code, defines "salary" as:

> "(d) 'Salary' means the annual salary, including longevity, attached to the firefighter's rank, *as established by the municipality appropriation ordinance*, including any compensation for overtime which is included in the salary so established, but excluding any 'overtime pay', 'holiday pay', 'bonus pay', 'merit pay', or any other cash benefit not included in the salary so established." (Emphasis added.) 40 ILCS 5/4-118.1(d) (West 2012).

Further, section 4402.30 of the Illinois Administrative Code defines salary as:

> "Salary, for purposes of this Part, means any fixed compensation received by an employee of a municipality that participates in one of the pension funds established under Article 3 or 4 of the Illinois Pension Code, *which has been approved through an appropriations ordinance of the municipality*." (Emphasis added.) 50 Ill. Adm. Code 4402.30 (1996).

As such, both the Pension Code and the Illinois Administrative Code specifically state that any calculation of salary, which is then used to determine pensionable salary, must be approved or established through an appropriations ordinance of the municipality. That did not happen here with respect to Bricker's 20% buyout.

¶ 17    We find that our decision today is supported by our recent decision in *Smith v. Board of Trustees of the Westchester Police Pension Board*, 405 Ill. App. 3d 626 (2010). In *Smith*, the court considered an appeal of an administrative review affirming the Westchester Police Pension

Board of Trustees' decision that a salary increase received before retirement "as a result of a pay grade increase, a merit pay increase, and holiday pay" was not part of a retiree's "salary" for purposes of pension calculating where such increase was not part of the municipality's appropriation ordinance. *Id*. at 627. The appellate court affirmed and found that: "The plain language of the Pension Code reveals that reference must be made to the salary attached to Smith's rank *as established in the municipality's appropriation ordinance* when determining Smith's pensionable salary." (Emphasis added.) *Id.* at 632. And, as noted by the circuit court judge, while the court in *Smith* was dealing with a statute regarding police pensions, "the statute in *Smith*, 40 ILCS 5/3-125.1 regarding pension contributions, contains an *identical* definition of 'salary' to that found in 40 ILCS 5/4-118.1(d) regarding firefighter pensions contributions." (Emphasis in original.)

¶ 18    The Pension Board does not challenge the fact that the 20% buyout was never approved through the appropriations ordinance; however, it argues that because "the CBA between the Village of Chicago Ridge and the Chicago Ridge Professional Firefighters' Local 3098 required approval by resolution of the village board of trustees" "[t]he Village's approval of the CBA *** had the same effect as if it had signed an appropriations ordinance explicitly allowing for the higher salary." However, while the CBA, and the incorporated letter of understanding, may have been the product of negotiations between the Village of Chicago Ridges and the Chicago Ridge Professional Firefighters' Union, which was then approved by resolution of the Village board of trustees, that is not the same as being approved through an appropriations ordinance. See 65 ILCS 5/8-2-9 (West 2012). An appropriation involves the setting apart from public revenue a certain sum of money for a specific object. *Illinois Municipal Retirement Fund v. City of Barry*, 52 Ill. App. 3d 644, 646 (1977). Where an act is required to be done by ordinance, anything less,

such as a resolution or referendum, is not sufficient. *Id*. at 647 ("A resolution is an act with lesser dignity than an ordinance. Where an act is required to be done by ordinance, a mere resolution is not sufficient."). Because the Village of Chicago Ridge's approval of the CBA was a mere resolution, we find the 20% buyout was not "approved through an appropriations ordinance of the municipality" (50 Ill. Adm. Code 4402.30 (1996)), and, therefore, could not be calculated as part of Bricker's pensionable salary. As such, we find the Pension Board's finding, which included the 20% buyout as pensionable salary, is clearly erroneous, and affirm the circuit court's ruling.

¶ 19    While we note that the Pension Board relies on a 2005 arbitration hearing and a Department of Insurance advisory opinion in support of its argument that Bricker's 20% buyout should be included as pensionable salary, we find the language of the Pension Code and the Illinois Administrative Code is clear and unambiguous where it defines a pensionable salary as one that is approved through an appropriations ordinance. Therefore, we need not look to outside sources to further interpret that language. *Brucker v. Mercola*, 227 Ill. 2d 502, 513-14 (2007) (When the language used is susceptible to more than one equally reasonable interpretation, the court may look to additional sources to determine the legislature's intent; however, if the statutory language is clear and unambiguous, then there is no need to resort to other aids of construction.).

¶ 20                                    CONCLUSION

¶ 21    For the reasons above, we find the Pension Board's ruling was clearly erroneous and, therefore, we reverse that finding. Accordingly, we affirm the circuit court's ruling and remand this matter to the Pension Board to recalculate Bricker's pensionable salary without the inclusion of the 20% buyout.

¶ 22    Affirmed.