2016 IL App (3d) 150122

Opinion filed June 14, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| ROBERT CRONHOLM, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| LOCKPORT FIRE PROTECTION | ) | |
| DISTRICT FIREFIGHTERS' PENSION | ) | Appeal No. 3-15-0122 |
| FUND AND ROBERT MONDRELLA, | ) | Circuit No. 14-MR-843 |
| in His Official Capacity as President of the | ) | |
| Board of Trustees of the Pension Fund, | ) | |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| (The Lockport Township Fire Protection | ) | |
| District, Todd Randich, Arthur Jacobs, | ) | Honorable |
| Michael Lopina, and John O'Connor, | ) | John C. Anderson, |
| Intervening Defendants). | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1    The defendant Board of Trustees of the Lockport Township Fire Protection District

Firefighters' Pension Fund (Board) appealed a circuit court's order reversing a Board decision

ordering the repayment of pension benefits for a period during which the Board determined that plaintiff Robert Cronholm reentered into active service as a firefighter.

¶ 2                                             FACTS

¶ 3        Cronholm retired as fire chief of the Lockport Fire Department on October 31, 2009. Prior to that, on October 9, 2009, Cronholm submitted an application to the Lockport Township Firemen's Pension Fund for regular retirement benefits under section 4-109 of the Illinois Pension Code (40 ILCS 5/4-109 (West 2010)) to begin on November 1, 2009.  By letter dated October 12, 2009, the Lockport Township Fire Protection District (District) was advised by counsel that hiring Cronholm as a chief administrator would not constitute reentry into active service.  Thereafter, on October 15, 2009, the Board approved Cronholm's application.  On that same day, the District's attorney proposed a new administrative job description, the chief administrator.  On October 26, 2009, Cronholm entered into a 3-year employment contract to be the chief administrator with the District.  He began that employment on November 1, 2009.

¶ 4        The Board requested an advisory opinion from its regulator, the Illinois Department of Insurance (DOI), pursuant to section 1A-106 of the Pension Code (40 ILCS 5/1A-106 (West 2010)) regarding whether Cronholm's work as the chief administrator of the fire department constituted a reentry into active service under section 4-117 of the Pension Code (40 ILCS 5/4-117 (West 2010)).  The DOI responded in a letter dated November 30, 2009, concluding that the fire chief and chief administrator were substantially the same position and would qualify as reentry into service for Cronholm.  The DOI opined that the "work of controlling and extinguishing fires" in section 4-106(a) of the Pension Code did not require the individual to "go to the site of the fire and begin working to extinguish the fire."

2

¶ 5    In response to the DOI's letter, the District crafted a new job description, "administrator" and planned to hire a fire chief.  By letter dated March 12, 2010, the DOI stated that the new position as administrator would not qualify as reentry into service.  The assistant Fire Chief, David Skoryi, was appointed as the new fire chief on March 18, 2010.

¶ 6    On May 19, 2010, firefighters with the District, who participated in the Lockport Township Firemen's Pension Fund, filed a declaratory judgment action, alleging that the Board breached its fiduciary duties by ruling that Cronholm did not reenter active service.  In that case, we reversed the circuit court's order dismissing the action, finding that there was no final administrative decision, and remanded to the circuit court so that the Board could hold a hearing and issue a final administrative decision regarding whether Cronholm reentered active service. *Randich v. Lockport Township Firefighters' Pension Board*, 2012 IL App (3d) 120032-U.  On remand, the Board conducted an evidentiary hearing to determine whether Cronholm reentered active service under section 4-117 of the Pension Code.

¶ 7    At the hearing, Cronholm testified that he remained in the same office, the fire chief's office, on November 1, 2009.  He switched offices with Skoryi after Skoryi was appointed fire chief in March 2010.  As chief administrator, Cronholm no longer responded to fire calls, nor investigated fires, nor engaged in code enforcement.  After November 1, he no longer had an emergency response vehicle.  Cronholm testified that after November 1, Skoryi had the ultimate authority to approve or disprove a grievance.  Cronholm did sign off on a resignation agreement in February 2010 as chief administrator.  He no longer contributed to the pension fund.  Skoryi testified that he was told he was acting chief as of November 1, 2009, but he did not get an increase in pay until he was appointed chief on March 18, 2010.  Cronholm submitted monthly reports to the Board, signed as the fire chief, from November 2009 to March 2010.  Starting with

3

April 2010, Skoryi submitted the fire chief report and Cronholm submitted an administrator's report. Skoryi testified that after November 1, 2009, as acting chief, he believed that he was the ultimate authority over the investigation of fires. He had the authority to discipline and assign firefighters, and he was the highest ranking person at the fire department with regard to supervising firefighters.

¶ 8    The Board concluded that Cronholm reentered active service from the date that he began his service as chief administrator (11/1/2009) until the organization structure of the District was reorganized and Skoryi was appointed fire chief (3/18/2010). In reaching this decision, the Board made the factual finding that during this time period, Cronholm's responsibilities remained the same, except for on-scene fire suppression. The Board relied exclusively on the DOI's interpretation of the Pension Code in concluding that Cronholm had reentered active service. During that 4 ½ month time period, the Board held that Cronholm's retirement benefits should have been suspended pursuant to section 4-117 of the Pension Code. The Board ordered that $1,000 per month be deducted from Cronholm's pension until the $17,693.68 paid during the reentry was repaid.

¶ 9    Cronholm filed a complaint for administrative review. The circuit court found that the case involved mixed questions of law and fact and applied the clearly erroneous standard of review. The circuit court concluded that the Board's decision that Cronholm had reentered service was clearly erroneous. It reversed the Board's decision and ordered that any pension monies taken from Cronholm be restored. The Board appealed.

¶ 10                                ANALYSIS

¶ 11    The Board argues that its determination that Cronholm reentered active service under section 4-117 of the Pension Code from November 1, 2009, until March 18, 2010, was grounded

4

in fact and law. Cronholm argues that the Board failed to properly apply the undisputed facts to the Pension Code and its decision was manifestly contrary to the statute. Cronholm argues that it was undisputed that his civil position did not include firefighter duties, so he did not reenter service.

¶ 12    Judicial review of a decision of the Board is governed by the Administrative Review Law. 40 ILCS 5/3-148 (West 2010); 735 ILCS 5/3-101 *et seq.* (West 2010). Rulings on questions of fact will be reversed only if against the manifest weight of the evidence, questions of law are reviewed *de novo*, and mixed questions of law and fact are reviewed under the clearly erroneous standard. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532-33 (2006). The plaintiff in the administrative proceeding bears the burden of proof. *Marconi*, 225 Ill. 2d at 532-33. We review the decision of the Board, not the trial court's decision. *Roselle Police Pension Board v. Village of Roselle,* 232 Ill. 2d 546, 552 (2009).

¶ 13    The facts are not in dispute. The crux of the disagreement is whether a civil employee, no longer sworn as a firefighter and no longer tasked with on-scene fire suppression duties, qualifies as a "firefighter" under the Pension Code. Since this critical factual issue is not in dispute, this is an issue of statutory construction, which is a question of law that we review *de novo*. *Roselle Police Pension Board*, 232 Ill. 2d at 552.

¶ 14    When construing a statute, our primary goal is to determine the intent of the legislature, and the plain and ordinary language of the statute is the best evidence of legislative intent. *Roselle Police Pension Board*, 232 Ill. 2d 546 at 552. However, we must also afford considerable deference to the DOI's interpretation of the Pension Code, because it was expressly given the responsibility for providing advisory services to funds covered by the Pension Code " on all matters pertaining to their operation. " *Roselle Police Pension Board*, 232 Ill. 2d at 559

5

(quoting 40 ILCS 5/1A-106 (West 2004)). We are not bound to an administrative agency's interpretation of the law, though, and will not afford deference if the interpretation was arbitrary, capricious, or manifestly contrary to the statute. *Id.* at 559.

¶ 15　　　　Section 4-117 of the Pension Code provides that "[i]f a firefighter receiving pension payments reenters active service, pension payments shall be suspended while he or she is in service." 40 ILCS 5/4-117 (West 2010). Section 4-106 of the Pension Code contains essentially three different definitions of "firefighter," dependent on whether the municipality adopted division 1 of article 10 of the Illinois Municipal Code (65 ILCS 5/10-1-1 *et seq*. (West 2010)), was subject to division 2.1 of article 10 of the Illinois Municipal Code (65 ILCS 5/10-2.1-1 *et seq*. (West 2010)), or was subject to neither division 1 nor 2.1. See 40 ILCS 5/4-106(a), (b), (c) (West 2010). The parties, and the DOI, all rely on section 4-106(a) of the Pension Code as the applicable subsection. Therefore, we limit our review to section 4-106(a) of the Pension Code.

¶ 16　　　　Section 4-106(a) of the Pension Code defines a firefighter as:

> "[A]ny person employed in the municipality's fire service as a firefighter, fire engineer, marine engineer, fire pilot, bomb technician or scuba diver; and in any of these positions where such person's duties also include those of a firefighter as classified by the Civil Service Commission of that city, and whose duty is to participate in the work of controlling and extinguishing fires at the location of any such fires." 40 ILCS 5/4-106(a) (West 2010).

¶ 17　　　　The Board determined that, even though Cronholm no longer had on-scene fire suppression duties and was a civilian, his position as chief administrator was essentially the same job as the fire chief. Thus, it determined that Cronholm had reentered active service from the day after his retirement, November 1, 2009, until March 18, 2010, when a new fire chief was

6

hired, and his pension payments should have been suspended during this time period. In reaching this decision, the Board relied exclusively on the DOI's advisory opinion.

¶ 18    In rendering its advisory opinions, though, the DOI failed to consider all of the language of section 4-106(a) of the Pension Code. The DOI stated the last requirement to being considered a firefighter under section 4-106(a) is a "*duty is to participate in the work of controlling and extinguishing fires* at the location of any such fires." (Emphasis added.) 40 ILCS 5/4-106(a) (West 2010). Specifically, the DOI emphasized the italicized phrase and found that this language did not limit the individual to having to go to the scene of the fire and begin working to extinguish the fire. It noted that, otherwise, this would exclude a partially disabled firefighter and fire chiefs and other municipal personnel who did not physically fight fires. However, this interpretation ignores, and makes superfluous, the last clause of section 4-106(a) of the Pension Code: "at the location of such fires." When interpreting a statute, we must construe the statute as a whole and every word should be given a reasonable meaning that does not render it superfluous. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 19    The transcripts from the debate in the legislature make it clear that the intent of the legislation was to limit participation in the pension system to only firefighters, not to the myriad of other personnel who, although integral to the success of the fire department, are *not* firefighters. Senator Joyce described the legislative intent as follows:

> "[House Bill] 2290, the intention of the bill is…as amended is to prevent the further abuse of the Downstate Firemen's Pension Fund by defining what positions qualify as firemen. The bill should save money since it restricts membership in the fund to just those certified positions indicated in the bill. In other words, that means no more janitors,

7

CETA people or groundskeepers will be included as firemen in the pension fund." 80th Ill. Gen. Assem., Senate Proceedings, June 25, 1977, at 98 (statements of Senator Joyce). The transcript from the House of Representatives corroborates the intent set forth by Senator Joyce. Representative Stuffle stated:

"What the Bill in [*sic*] the Amendment would do would be to limit those people who could be covered by the downstate fire pension system so he would not be bringing people into the system who are not actually firemen." 80th Ill. Gen. Assem., House Proceedings, June 27, 1977, at 32 (statements of Representative Stuffle).

¶ 20 House Bill 2290, as amended, was enacted as Pub. Act 80-1024 (eff. Sept. 22, 1977), which amended section 4-106 of the Pension Code to add the language limiting the definition of a firefighter.[1] Thus, the current version of section 4-106(a) of the Pension Code was specifically intended to define firefighters as those whose duty is to participate in the work of controlling and extinguishing fires at the location of any such fires. Since Cronholm could no longer participate in the work of controlling and extinguishing fires at the location of any such fires, he no longer qualified as a firefighter for purposes of the Pension Code and as such, the DOI's interpretation was manifestly contrary to the statute. It is interesting to note that the legislative history indicates that the DOI actively participated with the legislative sponsors to draft this specific amendment to the Pension Code to limit who would be covered by the downstate pension system. The Board's decision, that Cronholm was a firefighter who reentered active service within the meaning of section 117 of the Pension Code, in reliance on the DOI's interpretation, was in contravention of the plain language of the statute and cannot stand. We affirm the order

_____

[1] The amendments to section 4-106 effected by Pub. Act 80-1024 (eff. Sept. 22, 1977) actually amended subsections (b) and (c) of section 4-106. See Ill. Rev. Stat. 1978, ch. 108 ½, ¶ 4-106. Subsequent legislation, specifically Pub. Act 83-1440 (eff. Jan. 1, 1985), made amendments to section 4-106 that resulted in that language being codified at section 4-106(a). See 40 ILCS 5/4-106(a) (West 2010).

8

of the circuit court reversing the Board's decision. Since we find that Cronholm did not reenter active service, we need not address the recoupment issue.

¶ 21                                    CONCLUSION

¶ 22        The judgment of the circuit court of Will County is affirmed.

¶ 23        Affirmed.

¶ 24        JUSTICE SCHMIDT, dissenting.

¶ 25        I respectfully dissent. This dispute is really about whether we should allow a fire chief to keep his job while drawing a firefighter's pension by rewriting his contract to eliminate a "duty" that he most likely rarely or never performed. There is an obvious conflict between the definition of firefighter under section 4-106(a) of the Pension Code and the scores of firefighters presently classified as such that do not engage in on-site fire suppression for a variety of legitimate reasons. *Supra* ¶¶ 16-18. I would confirm the Board's ruling and further find that the Board has authority to recoup Cronholm's wages.

¶ 26        As the majority highlights, this court is to review the Board's decision and apply a clearly erroneous standard to mixed questions of fact and law. *Supra* ¶ 12. I find that it is the applicable standard here. Whether or not Cronholm's job (as opposed to "job description") changed after being named chief administrator is a question of fact. Whether a civil employee with all the duties in the job description of a firefighter chief—except on-scene fire suppression—qualifies as a firefighter under section 4-106(a) of the Pension Code is the "crux of the disagreement" between the parties and remains in dispute. *Supra* ¶ 13. Thus, the clearly erroneous standard of review applies.

¶ 27        The clearly erroneous standard of review lies somewhere between a manifest weight of the evidence standard and a *de novo* standard, allowing deference to a board's experience and

expertise. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). The Board's decision is only clearly erroneous if the opposite conclusion is clearly evident. *Antonelli v. Board of Trustees of the Hillside Police Pension Board*, 287 Ill. App. 3d 348, 353 (1997) (citing *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992), and *Whelchel v. Edgar*, 195 Ill. App. 3d 406, 409 (1990)).

¶ 28    Section 4-117(a) of the Pension Code (40 ILCS 5/4-117(a) (West 2010)) states that firefighters reentering active service are ineligible for pension payments until that time of service is over. It prohibits pensioners from collecting their pension and a salary from a department for doing the same thing they would be doing as sworn personnel. See *People ex rel. Malone v. Mueller*, 328 Ill. App. 593, 611-12 (1946). The DOI regulates all pension funds and is statutorily authorized to render advisory opinions on matters relating to pension funds pursuant to section 1A-106 of the Pension Code (40 ILCS 5/1A-106 (West 2010)). The Board relied on the DOI's advisory opinions in making its decision. As such, its decision is not, *per se*, clearly erroneous and this court should affirm the Board's decision.

¶ 29    The Board's decision is supported by legal authority. After Cronholm began working as chief administrator, the DOI advised that the lack of on-site fire suppression duties was not dispositive in determining what satisfies the statutory definition of a firefighter, noting that numerous personnel qualify under section 4-106(a) of the Pension Code as firefighters without such duties in their job description (*e.g.*, paramedics and other high ranking firefighters that primarily serve as administrators). The DOI's findings and conclusions on questions of fact are to be considered by this court as *prima facie* true and correct. *Antonelli v. Board of Trustees of the Hillside Police Pension Board*, 287 Ill. App. 3d at 353 (citing *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d at 88, and *Whelchel v. Edgar*, 195 Ill. App.

10

3d at 409). Relying in part on the DOI advisory opinions, the Board found that Cronholm reentered active service with the District while serving as chief administrator and simultaneously receiving pension benefits totaling $17,693.68 over the course of 4½ months. In response, the District rewrote Cronholm's job description and initiated the hire of a new fire chief.

¶ 30     The facts of this case also support the Board's decision. Cronholm did the same job as chief administrator that he did as fire chief. He reentered active service on day one of his retirement. Chief administrator was an unsworn position but identical to that of fire chief, save the removal of on-site fire suppression from his list of duties. Cronholm continued to carry his fire chief's badge, occupy the same office he did as fire chief, and prepare and present monthly fire chief reports while serving as the District's chief administrator. Assistant Chief Skoryi did none of these things until he assumed the role of fire chief.

¶ 31     "[A] plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden. [Citations.]" *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532-33 (2006). Cronholm did not satisfy this burden. There is no testimony that Cronholm fought fires when he was fire chief. He further testified that he did not coordinate staffing or equipment logistics, discipline firefighters, or engage in fire code enforcement while serving as chief administrator. However, no one testified that he performed any of these duties while serving as fire chief.

¶ 32     We should not turn a blind eye to the DOI's findings and the reality of the situation on the ground. The position of chief administrator was "essentially the same job as the fire chief." *Supra* ¶ 17. As chief administrator, Cronholm was getting paid from the pension fund while serving as the department's *de facto* chief in violation of section 4-117(a) of the Pension Code (40 ILCS 5/4-117(a) (West 2010)). Cronholm technically took a pay cut when he changed job

11

titles, reducing the District's out-of-pocket expenses, but his reduced salary was supplemented with draws from a pension fund which resulted in a *de facto* pay raise. While the District took away his car, it gave him a $700 per month allowance to get his own car. Why did he need a car at the District's expense?

¶ 33     Like the DOI, I find that the removal of direct on-site fire suppression responsibilities from the position of chief administrator is not dispositive in determining whether Cronholm returned to active service when serving as chief administrator. The removal of one duty among many does not clearly eliminate the possibility that Cronholm was a firefighter as defined by section 4-106(a) of the Pension Code (40 ILCS 5/4-106(a) (West 2010)). "[T]he intention of the legislature in drafting section 4-106 was [not] to include only those particular specialties named. It has been held such pension statutes are to 'be liberally construed in favor of those to be benefited.' " *Board of Trustees of the Firemen's Pension Fund v. Department of Insurance*, 109 Ill. App. 3d 919, 922 (1982) (quoting *Board of Trustees of the Policemen's Pension Fund v. Department of Insurance*, 42 Ill. App. 3d 155, 159 (1976)). The beneficiaries in this instance are the pensioners, present and future. Even under a *de novo* standard of review and liberally construing the statute, I would confirm the Board. Municipalities are looking for ways to save money. By striking one duty, which the former chief probably never performed while chief (he had the burden of proof and did not offer any evidence of this), the municipality kept its own chief at a reduced salary while transferring the obligation to pay some of Cronholm's "salary" to the pension fund. The end-around violates the spirit of the Act and will undoubtedly, if allowed, lead to further abuses of firefighters' pension funds. Chief Administrator Cronholm was no less of a firefighter than one who is on desk duty with a medical restriction that prevents him/her from on-scene fire suppression; he was no less fire chief than he was the day before he retired.

12

The majority's research into the legislative history of the statute has no bearing on this case. *Supra* ¶¶ 19-20. As chief administrator, Cronholm was neither a janitor nor groundskeeper.

¶ 34 The majority and Cronholm's statutory definition of firefighter wrongfully eliminates countless pensioners from the current section 4-106 pension system. We have a duty to avoid interpreting statutes in a manner that creates absurd results. *Christopher B. Burke Engineering, Ltd. v. Heritage Bank of Central Illinois*, 2015 IL 118955, ¶ 17. We should confirm the Board's ruling.

¶ 35 Having found that Cronholm reentered active service, I would also confirm the Board's recoupment of funds paid to Cronholm during his time as chief administrator. The Board is a fiduciary with respect to the pension it manages (40 ILCS 5/1-101.2 (West 2010)) and, therefore, has the authority to manage the pension fund's payments, including the correction of errors, within 35 days of our final administrative decision. 735 ILCS 5/3-103 (West 2010); see *Fields v. Schaumburg Firefighters' Pension Board*, 383 Ill. App. 3d 209, 219-21 (2008). We should confirm the Board's ruling and its authority to recoup the erroneous payments made to Cronholm.